FILED

2014 OCT 22 PM 2:18

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2014 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         Plaintiff,<br><br>         v.<br><br>GUO XIANG FAN,<br>   aka "David Fan,"<br>   aka "Guo Xiang Chen,"<br>      and<br>CHUNG YU YEUNG,<br>   aka "Louis Yeung,"<br><br>         Defendants. | No. CR 14- CR14-0609<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 1349: Conspiracy to Commit Bank Fraud; 18 U.S.C. § 1344: Bank Fraud; 18 U.S.C. § 2: Aiding and Abetting and Causing an Act to be Done; 18 U.S.C. § 1956(h): Conspiracy to Launder Monetary Instruments; 18 U.S.C. §§ 982(a)(1) and 982(a)(2)(A): Criminal Forfeiture] |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 1349]

A.   INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

1.   Defendant GUO XIANG FAN, also known as ("aka") "David Fan," aka "Guo Xiang Chen" ("defendant FAN"), was the President

and Chief Executive Officer of Eastern Tools and Equipment
("ETQ"), a company that sold portable generators and other
equipment.  ETQ maintained its business headquarters in Ontario,
California, within the Central District of California.

2.    Defendant CHUNG YU YEUNG, aka "Louis Yeung"
("defendant YEUNG"), was a Vice President of ETQ.

3.    Unindicted co-conspirator "X.C.P." was defendant FAN's
wife and a Director of ETQ.

4.    Unindicted co-conspirator "A.Y.," aka "K.Y.Y."
("unindicted co-conspirator A.Y."), was the Controller of ETQ.

5.    Unindicted co-conspirator "J.L.C." was an employee of
ETQ.

6.    Unindicted co-conspirators "W.W.," "P.C.," and "K.D."
were associates of defendants FAN and YEUNG, who assisted
defendants FAN and YEUNG in creating and maintaining shell
companies.

7.    United Commercial Bank ("UCB") and East West Bank
("East West") (collectively the "lenders") were financial
institutions, the deposits of which were insured by the Federal
Deposit Insurance Corporation.

8.    In approximately November 2009, East West began to
absorb UCB, taking over UCB's accounts.

9.    In or about 2006, defendants FAN and YEUNG applied to
UCB and obtained a $5 million line of credit on behalf of ETQ.
As part of the application process, defendant FAN signed and
submitted an initial promissory note, a business loan agreement,
and other documents (collectively, the "loan documents") to UCB.

10.   Under the terms of the loan documents, the borrowing
base formula for ETQ's line of credit was based on two factors:
(1) ETQ's accounts receivable, i.e., funds owed to ETQ by
customers that purchased merchandise from ETQ; and (2) ETQ's
inventory.   The amount of money that ETQ would be able to borrow
pursuant to the line of credit was based on a formula, namely
75% of net accounts receivable for all eligible accounts, plus
60% of net eligible inventory, up to a predetermined ceiling.
Until in or about April 2010, the ceiling was $10 million; after
that time, the ceiling was raised to $11 million.

11.   The loan documents explicitly defined "eligible
accounts" so as to exclude any account that was a subsidiary of
or affiliated with ETQ or its shareholders, officers, or
directors.

12.   Under the terms of the loan documents, ETQ was
required to submit a monthly borrowing base certificate to
justify the continuation of credit for the existing loaned funds
and to permit borrowing of additional funds under the line of
credit.   The monthly borrowing base certificate required ETQ to
provide number entries for the two relevant categories: (1) net
accounts receivable for all eligible accounts; and (2) eligible
inventory.   ETQ also was required to submit with the monthly
borrowing base certificate a collateral accounts receivable
aging report.   (The monthly borrowing base certificates and
accounts receivable aging reports are hereinafter referred to as
the "monthly submissions.")

13.   Also under the terms of the loan documents, the
monthly submissions were required to be accurate,

1  complete, and truthful.  An officer of ETQ was required to sign
2  the monthly submissions certifying that they were accurate,
3  complete, and truthful.

4      The Troubled Asset Relief Program

5      14.  The United States Treasury Department's Troubled Asset
6  Relief Program ("TARP") was created by the Emergency Economic
7  Stabilization Act of 2008 to restore liquidity and stability to
8  the financial system in the wake of the preceding financial
9  crisis.  Under TARP's Capital Purchase Program, taxpayer money
10  was invested with financial institutions in order to expand the
11  flow of credit to United States consumers and businesses to
12  promote the sustained growth and vitality of the United States
13  economy.  UCB and East West were recipients of TARP funds.

14  B.  THE OBJECT OF THE CONSPIRACY

15      15.  Beginning in or around June 2007, and continuing
16  through in or around September 2012, in Los Angeles County,
17  within the Central District of California, and elsewhere,
18  defendants FAN and YEUNG, together with unindicted co-
19  conspirators X.C.P., A.Y., J.L.C., W.W., K.D., P.C., and others
20  known and unknown to the Grand Jury, knowingly combined,
21  conspired, and agreed to commit bank fraud, in violation of
22  Title 18, United States Code, Section 1344.

23  C.  THE MANNER AND MEANS OF THE CONSPIRACY

24      16.  The object of the conspiracy was carried out, and to
25  be carried out, in substance, as follows:

26          a.  Defendant FAN, defendant YEUNG, and their co-
27  conspirators, including unindicted co-conspirators X.C.P., A.Y.,

28

4

1    J.L.C., W.W., K.D., and P.C., would create and cause to be

2    created, and maintain and cause to be maintained, approximately

3    20 shell companies (collectively the "shell companies"),

4    including, among others, Greystone Distributing Inc.,

5    International Power City, and Western Wiss Sales Inc.   One

6    purpose of the shell companies would be to create the appearance

7    that ETQ had greater eligible accounts receivable than it

8    actually did.

9            b.   Defendants FAN and YEUNG, and their co-

10   conspirators, including unindicted co-conspirators X.C.P., A.Y.,

11   J.L.C., W.W., K.D., and P.C., would file fictitious business

12   name statements, create DBAs, open post office boxes, open bank

13   accounts, and set up telephone numbers for the shell companies.

14           c.   Defendants FAN and YEUNG, and their co-

15   conspirators, including unindicted co-conspirators X.C.P., A.Y.,

16   J.L.C., W.W., K.D., and P.C., would move money from ETQ's bank

17   account into and among the shell companies' bank accounts to

18   create the false appearance of substantial commercial activity

19   that would support the overstated accounts receivable amounts

20   that defendants FAN and YEUNG would fraudulently claim that ETQ

21   held.

22           d.   Defendants FAN and YEUNG would submit and cause

23   to be submitted to UCB and East West numerous monthly

24   submissions related to ETQ that contained two types of material

25   misrepresentations.   First, defendants FAN and YEUNG would

26   overstate eligible accounts receivable related to ETQ by

27   including ineligible accounts receivable, namely, accounts

28

1   receivable purportedly from customers that were, in fact, from

2   shell companies created by and affiliated with defendants FAN

3   and YEUNG, and their co-conspirators, including unindicted co-

4   conspirators X.C.P., A.Y., J.L.C., W.W., K.D., and P.C.  As

5   such, these accounts receivable were not eligible accounts that

6   should have been considered when determining the borrowing base

7   formula for ETQ's line of credit under the terms of the loan

8   documents.  Second, defendants FAN and YEUNG would identify as

9   customers companies that were, in reality, not actual customers

10  of ETQ.  For the most part, the shell companies did not actually

11  buy anything from ETQ, did not receive any merchandise from ETQ,

12  and did not owe any money to ETQ.

13          e.    Defendants FAN and YEUNG would submit and cause

14  to be submitted to UCB and East West various requests for

15  increases in ETQ's line of credit, knowing that the

16  documentation supporting these requests, including documentation

17  showing the overstatement of accounts receivable owed to ETQ,

18  was materially false.  As a result of these fraudulent requests,

19  defendants FAN and YEUNG would cause ETQ's line of credit to

20  increase to a maximum amount of $11 million.

21          f.    Under the terms of the loan documents, the

22  inventory at ETQ's Ontario headquarters was collateral for the

23  loans provided pursuant to the loan documents.  In or around

24  September 2012, after ETQ had failed to make payments due on the

25  line of credit and East West secured a court order prohibiting

26  ETQ from selling, moving, or dissipating ETQ's inventory in any

27  way, defendants FAN and YEUNG would move and cause to be moved

28

1  ETQ's inventory out of ETQ's Ontario facility to various other
2  locations, including an ETQ facility in Ohio, with the intention
3  of selling the inventory in violation of the court order and
4  preventing East West from foreclosing on the collateral for the
5  line of credit.

6      17.  As a result of the fraudulent representations that
7  defendants FAN and YEUNG submitted and caused to be submitted to
8  UCB and East West, as well as the dissipation of ETQ's inventory
9  at the direction of defendants FAN and YEUNG in violation of a
10 court order, East West sustained a loss of approximately
11 $9,157,172.

1  COUNTS TWO THROUGH FIVE

2  [18 U.S.C. §§ 1344, 2]

3  A.   INTRODUCTORY ALLEGATIONS

4      18.   The Grand Jury incorporates by reference and re-

5  alleges paragraphs 1 through 14 of this Indictment as though set

6  forth in their entirety herein.

7  B.   THE SCHEME TO DEFRAUD

8      19.   Beginning in or around June 2007, and continuing

9  through in or around September 2012, in Los Angeles County,

10 within the Central District of California, and elsewhere,

11 defendants FAN and YEUNG, aiding and abetting each other,

12 together with unindicted co-schemers X.C.P., A.Y., J.L.C., W.W.,

13 K.D., P.C., and others known and unknown to the Grand Jury,

14 knowingly and with intent to defraud, executed and attempted to

15 execute a scheme to defraud UCB and East West as to material

16 matters and to obtain moneys, funds, assets, and other

17 properties owned by and in the custody and control of UCB and

18 East West, by means of materially false and fraudulent

19 pretenses, representations, and promises, and the concealment of

20 material facts.

21     20.   The fraudulent scheme operated, in substance, as

22 described in paragraph 16 of this Indictment, which is hereby

23 incorporated by reference as though set forth in its entirety

24 herein.

25 C.   EXECUTIONS OF THE FRAUDULENT SCHEME

26     21.   On or about the dates set forth below, within the

27 Central District of California and elsewhere, defendants FAN and

28 YEUNG, together with unindicted co-schemers X.C.P., A.Y.,

8

1  J.L.C., W.W., K.D., P.C., and others known and unknown to the

2  Grand Jury, committed and willfully caused others to commit the

3  following acts, each of with constituted an execution and

4  attempted execution of the fraudulent scheme:

| COUNT | APPROXIMATE DATE | ACT |
|-------|------------------|-----|
| TWO | 6/30/09 | Submission of ETQ Borrowing Base Certificate to the lenders, which falsely listed approximately $8,437,895 in eligible accounts receivable. |
| THREE | 9/30/09 | Submission of ETQ Borrowing Base Certificate to the lenders, which falsely listed approximately $8,857,435 in eligible accounts receivable. |
| FOUR | 2/28/10 | Submission of ETQ Borrowing Base Certificate to the lenders, which falsely listed approximately $11,026,726 in eligible accounts receivable. |
| FIVE | 7/31/10 | Submission of ETQ Borrowing Base Certificate to the lenders, which falsely listed approximately $11,223,912 in eligible accounts receivable. |

COUNT SIX

[18 U.S.C. § 1956(h)]

A.   INTRODUCTORY ALLEGATIONS

22.   The Grand Jury incorporates by reference and re-alleges paragraphs 1 through 14, 16, and 20 of this Indictment as though set forth in their entirety herein.

23.   In or around March 2004, defendant FAN and unindicted co-conspirator X.C.P. opened UCB bank account number **** 7367 for Universal Bio-Medical dba Universal Sales Marketing Company (the "Universal Bio Account").

24.   In or around March 2009, unindicted co-conspirator X.C.P. opened UCB bank account number **** 3367 for Infinity Marketing and Consulting Group (the "Infinity Account").

B.   THE OBJECT OF THE CONSPIRACY

25.   Beginning in or about June 2007 and continuing to in or about September 2012, in the Central District of California and elsewhere, defendant FAN, together with unindicted co-conspirator X.C.P. and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally commit the following offense against the United States:   Knowing that the property involved in a financial transaction affecting interstate commerce represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of specified unlawful activity, that is, conspiracy to commit bank fraud and bank fraud, in violation of Title 18, United States Code, Sections 1349 and 1344, conducting and attempting to conduct financial transactions knowing that the transactions were designed in whole and in part

10

1  to conceal and disguise the nature, location, source, ownership,

2  and control of the proceeds of said specified unlawful activity,

3  in violation of Title 18, United States Code, Section

4  1956(a)(1)(B)(i).

5  C.   THE MANNER AND MEANS OF THE CONSPIRACY

6       26.   The object of the conspiracy was carried out, and to

7  be carried out, in substance, as follows:

8            a.   Defendant FAN, together with unindicted co-

9  conspirator X.C.P. and others known and unknown to the Grand

10 Jury, would transmit, and cause to be transmitted, funds from

11 the ETQ operating account that were the proceeds of the bank

12 fraud scheme described in paragraphs 11 and 15 above, to the

13 Infinity Account, which had previously been dormant, and the

14 Universal Bio Account, for the purpose of concealing and

15 disguising the true nature, ownership, and control of these

16 proceeds.

17           b.   Defendant FAN, together with unindicted co-

18 conspirator X.C.P. and others known and unknown to the Grand

19 Jury, would conceal and disguise the true nature, ownership, and

20 control of the proceeds described above by, among other means,

21 making it appear as if ETQ owed money to Infinity Marketing and

22 Consulting Group and Universal Sales Marketing Company for

23 legitimate business expenses, including marketing and consulting

24 expenses.

25           c.   Defendant FAN, together with unindicted co-

26 conspirator X.C.P. and others known and unknown to the Grand

27 Jury, would then transfer the proceeds of the bank fraud from

28 the Infinity and Universal Bio Accounts to defendant FAN and

1    unindicted co-conspirator X.C.P., who would then use the

2    proceeds to pay personal expenses, including mortgage payments.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FORFEITURE ALLEGATION

[18 U.S.C. §§ 982(a)(1) and 982(a)(2)(A)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given to defendants GUO XIANG FAN, also known as ("aka") "David Fan," aka "Guo Xiang Chen" ("defendant FAN"), and CHUNG YU YEUNG, aka "Louis Yeung" ("defendant YEUNG"), that the United States of America will seek forfeiture as part of any sentence, in accordance with Title 18, United States Code, Sections 982(a)(1) and 982(a)(2)(A), in the event of any defendant's conviction on any of Counts One through Six of this Indictment.

2.    Defendants FAN and YEUNG shall forfeit to the United States of America the following property:

        a.    all right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of any offense set forth in any of Counts One through Six of this Indictment, including but not limited to, the real property located in San Dimas, California, owned by Louis Yeung and Carolyn Zhuang, husband and wife as joint tenants, more particularly described as:

        Real property, in the city of San Dimas, County of Los
        Angeles, State of California, described as follows:
        Parcel No. 1:
        Lot 15 of Tract 44041 in the City of San Dimas, California,
        as Per map Recorded in Book 1088 Pages 1 to 6 Inclusive of
        Maps, in  the Office of the County Recorder of Said County.
        Except therefrom all minerals, including, without

1        limitation, all gas, minerals, hydrocarbon and similar

2        rights, and all water, water rights, geothermal steam, and

3        steam power, within or underlying such Real Property,

4        together with the Perpetual Right of Development thereof,

5        provided, however, that such rights do not include the

6        right to enter upon the surface and Top 500 feet of the

7        subsurface of said land, as per deed recorded September 30,

8        1988, as Instrument No. 88-1584909.

9        Parcel No. 2:

10       Non-Exclusive Easements for access, ingress, egress,

11       drainage, maintenance, repairs, and for other purposes, all

12       as described in the Declaration of Covenants Conditions and

13       Restrictions and Reservation of Easements for Rancho via

14       Verde Recorded on January 20, 1987, as Instrument No. 87-

15       75344 and any amendments thereto.  Assessor's Parcel No.

16       8448-054-015.; and

17           b.   a sum of money equal to the total value of the

18 property described in subparagraph 2(a).  If more than one

19 defendant is found guilty on any of Counts One through Six, each

20 defendant found guilty shall be jointly and severally liable for

21 the entire amount forfeited pursuant to that Count.

22          3.   Pursuant to Title 21, United States Code, Section

23 853(p), as incorporated by Title 18, United States Code, Section

24 982(b), each defendant shall forfeit substitute property, up to

25 the total value of the property described in the preceding

26 paragraph if, as the result of any act or omission of a

27 defendant, the property described in the preceding paragraph, or

28 any portion thereof (a) cannot be located upon the exercise of

1  due diligence;  (b) has been transferred, sold to, or deposited

2  with a third party; (c) has been placed beyond the jurisdiction

3  of the court; (d) has been substantially diminished in value; or

4  (e) has been commingled with other property that cannot be

5  divided without difficulty.

6

7

8                                          A TRUE BILL

9

10                                    ___/S/_____

11                                    Foreperson

12  STEPHANIE YONEKURA
    Acting United States Attorney

13

14

    ROBERT E. DUGDALE

15  Assistant United States Attorney
    Chief, Criminal Division

16
    RICHARD E. ROBINSON

17  Assistant United States Attorney
    Chief, Major Frauds Section

18
    BENJAMIN D. SINGER

19  Deputy Chief, Fraud Section
    United States Department of Justice

20
    FRED MEDICK

21  Trial Attorney, Fraud Section
    United States Department of Justice

22

23

24

25

26

27

28